Milligan, J.,
delivered the opinion of the court:
The claim made in this case is for the net proceeds of thirty-two bales of cottou, alleged to have been taken possession of under the orders of General N. P. Banks, in the parish of Saint Landry, in the State of Louisiana, in 1863.
• In tracing the facts of this ease the court finds some difficulty. The cotton in question was raised on the claimant’s plantation, in 1862, in the parish of Saint Landry, in the State of Louisiana. The ownership of this cotton is not disputed, nor is it questioned that it was, on or about the 1st day of May, 1863, taken possession pf by Captain F. W. Perkins, assistant quartermaster, United States Volunteers, and receipted for by him. It was then hauled to Barre’s Landing, on Bayou Corlableau,- and there consigned to Colonel S. B. Holabird, chief quartermaster at New Orleans, and shipped to him on United States transports. Beyond this there is no specific identification of the cotton claimed in this suit. At New Orleans it was intermingled with other cottons collected from the same country, and shipped among the first lots of cotton sent out by Holabird from New *453 Orleans to New York and Boston, and sold in either the one or the other markets, and the proceeds paid into the Treasury.
But whether this cotton was sold in Boston or in New York does not satisfactorily appear. The probability is it was consigned to Boston, but, for some reason not shown in the record, stopped short at New York, and there'turned over to and sold by Major Yan Yliet. But there is no sufficient proof of this fact, and as there is a small difference in the prices for which cotton shipped from New Orleans to New York and Boston sold in these markets, we have estimated the price of this cotton at an average per bale of the cotton sold at each point, which is found to be $232.11.
The claimant is proven to have been opposed to secession, and to have had no faith in or desire for the success of the ¡rebellion. He bore the reputation of a Union man, and on that account incurred the ill-will of his rebel neighbors. He had but one son capable of bearing arms, whom lie sent to Europe, where he remained until the war was over, and did and suffered many other things tending to prove his loyalty to the Government of the United States. On all the facts we find he adhered to and maintained his allegiance to the United States, and gave no aid or comfort to the rebellion, except, just previous to the advance of General Banks, in 1863, into that part of the country where the claimant resided, he sold a portion of •iris cotton then on his plantation to a deputy agent of the Confederate States, The amount sold was about one luiud'ml bales, for which he received either confederate money or bonds of the Confederate States. The sale was made to raise money to pay the claimant’s debts and to support his family, and at a time when there were no other purchasers in the locality than the confederate government. But the sale was not forced, or made under any other restraint than the ordinary necessities of the times, and for the purposes aforesaid.
It does not appear that the cotton claimed in this action constituted any part of that sold to the rebel government. There were on the claimant’s plantation three hundred and fifty bales of the crop of 1861, besides the thirty-two claimed in this suit, when Captain Perkins seized them. The thirty-two bales were of the crop of 1862, which had been just ginned and concealed in a corn-crib. The other cottons were 'Stored in different buildings on the plantation, of which Captain Perkins seized at *454 the same time about one hundred and seventy-five bales, but before he removed them, on the next day after the seizure, they were burned by a party of rebel soldiers.
On the 2Cth of June, 1865, the claimant took and subscribed the amnesty oath prescribed by the President in his-proclamation of the 26th of May, 1865, which he has faithfully kept and observed ever since.
The Attorney-General, on behalf of the United States, objected to the admission of the oath of amnesty as evidence in support of the claimant’s right of action, or in any way to establish his standing in court, or right to bring or maintain this suit; and the court overruled the objection and admitted the evidence.
On these facts only one question which we have not again and again decided can arise, and that is in respect to the sale of a portion of the claimant’s cotton to the Confederate States. However important this question may have been prior to the decision of the Supreme Court in Kleiners Case, it has now no practical value, and we do not therefore feel called upon to decide it.
The title, seizure, sale, and payment of the net proceeds of the claimant’s cotton into the Treasury being made out, the amnesty oath completes his right to recover; and we hold him entitled to recover the net proceeds of thirty-two bales of cotton, at $232.11 per bale, which we find to be $7,427.52; for which judgment will be entered.